The document below is hereby signed.

Signed: August 20, 2018



*S. Martin Teel Jr.*

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHELTON FEDERAL GROUP, LLC, | ) | Case No. 15-00623 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| MARC E. ALBERT, CHAPTER 7 TRUSTEE FOR THE ESTATE OF SHELTON FEDERAL GROUP, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | Adversary Proceeding No. 17-10026 |
| v. | ) ) | |
| CLARK CONSTRUCTION GROUP, *et al.*, | ) ) ) ) | **Not for Publication in West's Bankruptcy Reporter.** |
| Defendants. | ) | |

MEMORANDUM DECISION AND ORDER RE TRUSTEE'S LINE
TO REISSUE SUMMONS AGAINST THE SHELTON GROUP, LLC

The trustee has filed *Trustee's Line Requesting Reissuance of Summons Against The Shelton Group, LLC a/k/a Shelton Group LLC* ("*Line Request*") (Dkt. No. 39). The defendant Clark Construction Group ("Clark") has opposed the reissuance of the summons under Fed. R. Civ. P. 4(m), made applicable under Fed. R. Bankr. P. 7004. For the reasons stated below, I will grant the reissuance

of the summons.

I

This adversary proceeding is to avoid several prepetition and postpetition transfers of funds made in a construction project on the University of Maryland's Bioengineering Building, located on the University's College Park campus ("Project"). The debtor was engaged in construction work prior to its filing its bankruptcy case on December 1, 2015. On March 9, 2015, the debtor entered into a subcontract with Clark to do work on the University's Bioengineering Building. The trustee alleges that on May 25, 2015, the debtor entered into an assignment agreement with The Shelton Group, LLC ("The Shelton Group"), whereby the debtor assigned the benefits of its contract with Clark to The Shelton Group. The trustee alleges that several transfers were made under this assignment during the preference period and postpetition, and that these transfers can be avoided and recovered under 11 U.S.C. §§ 547 (avoidance of preference transfers), 548 (avoidance of fraudulent transfers), 549 (avoidance of postpetition transfers), and 550 (recovery of avoided transfers). The trustee further alleges that Clark benefitted from the assignment to The Shelton Group and that the estate can demand turnover of estate property under 11 U.S.C. §§ 542 (turnover of estate property) and 550.

The Shelton Group is a corporation organized under the laws

of the State of Delaware.  The Delaware Department of State, Division of Corporations, has the Harvard Business Services, Inc. listed as The Shelton Group's registered agent at 16192 Coastal Highway, Lewes, DE 19958.  Chris Shelton is a managing officer for The Shelton Group.  Chris Shelton's address on the docket banner in the main bankruptcy case is listed as 100 M Street, SE, Suite 600, Washington, D.C. 20003.  This address is also on the Bankruptcy Noticing Center ("BNC") mailing list, but was marked as undeliverable.[1]  The BNC also has Chris Shelton's address as 913 6th Street, SW, Washington, D.C. 20024.

 The court issued summonses on the defendants in this adversary proceeding on August 4, 2017, but none of the summonses were served on defendants within the 7 days required by Fed. R. Bankr. P. 7004(e).  Accordingly, the trustee submitted a line requesting the reissuance of the summonses.  The court reissued the summonses on August 23, 2018.  The trustee served a summons and complaint on The Shelton Group on August 28, 2017.  The summons was served by first class mail addressed to "The Shelton Group, LLC A/K/A Shelton Group, LLC, 100 M Street, SE, Suite 600, WDC, 20003."  Additionally, the trustee served a summons and complaint against the defendant Clark.  Clark filed an *Answer of*

---

[1] The 100 M Street, SE address appeared on filings early on in the bankruptcy case as the address for The Shelton Federal Group, an example being the proposed order filed on August 23, 2016, as part of Dkt. No. 97 in the main case, Case No. 15-00623.

*Defendant Clark Construction Group, LLC to Trustee's Complaint* ("*Answer*") (Dkt. No. 15) to the summons and complaint on September 22, 2017, asserting as an affirmative defense that the service on it was insufficient. The Shelton Group never answered the summons and the trustee sought an entry of default (Dkt. No. 25) on December 18, 2017. Clark filed an opposition (Dkt. No. 26) to the entry of default, contending that the summons was insufficient because it was not mailed to the attention of a managing officer or agent of The Shelton Group. The trustee never filed a response to Clark's opposition and the court denied the request for entry of a default on January 3, 2018 (Dkt. No. 28).

On February 6, 2018, the trustee filed the *Line Request* requesting that a summons for The Shelton Group be reissued. Clark filed *Clark Construction Group, LLC's Opposition to Trustee's Line Requesting Reissuance of Summons Against The Shelton Group, LLC a/k/a Shelton Group LLC* (Dkt. No. 40) contending that this would be the third time a summons was issued against The Shelton Group, the statute of limitations for the trustee's claims had expired, the trustee had taken too long under Rule 4(m) to serve the summons and complaint, and the trustee had not shown good cause to reissue the summons. The trustee responded that Clark did not have standing to challenge the sufficiency of service against The Shelton Group, and that

the court had discretion to reissue a summons, especially when the defendant had actual notice of the lawsuit. The trustee further alleged that he could show good cause for the summons to be reissued.

The court held a hearing on March 2, 2018. After hearing arguments, the court took the matter under advisement.

II

The trustee contends that Clark does not have standing to challenge the sufficiency of service of the summons and complaint against The Shelton Group. There are two types of standing in federal court, constitutional standing and prudential standing. For a party to have constitutional standing, that party must show that it has suffered or will suffer an "injury in fact," a causal connection that is fairly traceable to the conduct of the opposing party, and that a favorable decision by the court will likely redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In addition to constitutional standing, a party must show that it also has prudential standing. *Goleta National Bank v. O'Donnell*, 239 F. Supp. 2d 745, 750-751 (S.D. Ohio 2002). The doctrine of prudential standing sets forth three broad principles including: the prohibition of allowing parties to raise the rights of a third-party, prohibition in hearing cases of generalized grievances, and the requirement that the harm be

within the zone of interests protected by a statute. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). Courts do not grant standing to co-defendants to challenge the sufficiency of service to another defendant. *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010). Courts will grant third-party standing where the third-party shows (1) a "close" relationship with the person possessing the right being asserted, and (2) where there is a "hindrance" to the possessor's ability to protect its own interests. *Kowalski v. Tesmar*, 543 U.S. 125, 130 (2004).

Clark does not have constitutional standing. Under the better view of the law, a trustee is not required to sue the initial transferee of an avoidable transfer in order to sue to recover the avoidable transfer from a subsequent transferee or the entity for whose benefit the transfer was made. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 563 B.R. 737, 753 (Bankr. S.D.N.Y. 2017). Furthermore, Clark will be entitled to defend that the transfers at issue are not avoidable even if the Shelton Group defaults after being properly served and a default judgment is entered against The Shelton Group. Accordingly, allowing The Shelton Group to be served will not cause injury to Clark.

Moreover, Clark does not have prudential standing to challenge the service made on The Shelton Group. As a co-

6

defendant, Clark is not asserting its own right to proper service and accordingly is seeking third-party standing. Clark has not presented any reason why the court should grant an exception to the general rule prohibiting third-party standing. Clark has not put forth any evidence to show a close relationship with The Shelton Group. Neither has Clark shown any hindrance to The Shelton Group protecting its own rights. Therefore, Clark does not have standing to challenge the trustee's *Line Request*.

### III

Even though Clark does not have standing to object to the trustee's *Line Request*, Clark has raised important points that the court must consider in determining whether to grant the trustee's *Line Request* and allow reissuance of the summons. Rule 4 lays forth the requirements of proper service. Under Rule 4(h)(1)(B), a complaint on a corporation must be served on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The trustee failed to make proper service within 90 days after the filing of the complaint. Accordingly, Rule 4(m) does

apply. Rule 4(m) grants the court discretion to dismiss the case as to the defendant not properly served or require service in a specified amount of time, but if the trustee shows good cause, the court is mandated to reissue the summons. Accordingly, the court must determine whether the trustee can set forth good cause, and if not, whether the court, in its discretion, should grant the *Line Request*. The Trustee cannot show good cause, to mandate a reissuance of the summons, but the court will permit the reissuance of the summons in its discretion.

    A.   Good Cause

The court must reissue the summons if the trustee can show good cause. Rule 4(m). In the D.C. Circuit, "[g]ood cause exists 'when some outside factor . . . rather than inadvertence or negligence, prevented service.'" *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012)(quoting *Lepone-Dempsey v. Carroll Cnty. Com'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007)). The court found good cause in *Moore v. Agency for International Development*, 994 F.2d 974 (D.C. Cir. 1993), where a pro se plaintiff made two attempts to serve the defendants, who were represented by counsel, and the defendants delayed in responding to the complaint after repeatedly asking for extensions of time, so that the plaintiff believed service had been properly made.

The trustee has not shown any outside factors that have prevented him from providing proper service. The trustee

contends that he can show good cause because he believed the summons was in conformity with Rule 4 and properly served. However, believing service was proper is not an outside factor that prevented service.  This case is not like *Moore* where the defendants delayed responding and requested multiple extensions of time.  The Shelton Group has taken no action that could reasonably lead the trustee to believe The Shelton Group had received proper service, because The Shelton Group has not taken any action at all.  It is the trustee's responsibility as the plaintiff, not The Shelton Group's as the defendant, to ensure that service is properly made.

    The trustee also contends that The Shelton Group would not be prejudiced by the reissuance of a summons because it has shown in other cases that it does not intend to defend itself in avoidance actions brought by the trustee.  The trustee additionally contends that the bankruptcy estate would be prejudiced by a denial of a reissuance of the summons because the statute of limitations has expired.  These may be factors for the court to consider when deciding whether to grant reissuance of a summons in its discretion, but not for determining good cause. Therefore, the trustee cannot show good cause to mandate the court to reissue the summons.

    B.    The Court's Discretion

    The trustee requests the court to use its discretion to

9

reissue the summons. Courts have discretion to dismiss a case where service has not been made within 90 days of filing the complaint or to require service be made within a specified time. Rule 4(m). "It is unsettled in this Circuit whether the 'exercise of [this] discretion' is 'cabined by Rule 6(b)(2)'s requirement that 'excusable neglect' be found, or by equitable factors." *Aurora v. Buckhead Family Dentistry, Inc.*, 263 F. Supp. 3d 121, 132 (D.D.C. 2017) (quoting *Mann*, 681 F.3d at 376). Dismissal under Rule 4(m) is appropriate when "service is the result of inadvertence, oversight or neglect . . . and dismissal leaves plaintiff 'in the same position as if the action had never been filed.'" *Mann*, 681 F.3d at 376 (quoting H.R. 7152 Amendments to Federal Rules of Civil Procedure, 1982 U.S. Code Cong. & Admin. News 4434, 4442). The court considers several factors when determining excusable neglect including "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003).

In *Mann*, the plaintiffs failed to properly serve numerous defendants and the District Court dismissed the case under Rule 4(m). 681 F.3d at 371. After noting that the plaintiffs had not

shown good cause, the U.S. Court of Appeals for the District of Columbia Circuit reviewed the District Court's discretion to deny reissuing the summons.  *Id.* at 376.  The court found that the District Court had not abused its discretion because while the plaintiffs claimed there were "statute of limitations considerations," the plaintiffs could not show which, if any, of its claims would be time-barred if the case were dismissed.  *Id.*  The plaintiffs were also not unsophisticated pro se litigants, and the plaintiffs had known of the defect for five months and did nothing.  *Id.*

   The trustee contends that the delay for reissuing the service was due to the fact that the trustee believed service was proper.  While the trustee was mistaken about the service, and while this mistake does not rise to good cause, it does evidence good faith.  In a number of other proceedings, The Shelton Group has not participated in the proceedings.  The trustee understandably did not expect The Shelton Group to respond to the complaint and summons, given the fact that The Shelton Group had opted to not defend itself in another adversary proceeding.  In *Albert v. Loudoun Commercial Title, L.L.C.*, Adversary Proceeding No. 16-10044, an attorney accepted service on behalf of The Shelton Group and filed an answer, but then that attorney withdrew in June 2017 and The Shelton Group never obtained the services of another attorney.  This eventually led to the entry

of a default judgment for failure of The Shelton Group to appear at scheduling conferences on November 7, 2017, and December 5, 2017. Therefore, there was little surprise when The Shelton Group never responded in this adversary proceeding. Under that circumstance, the trustee had little reason to believe improper service had been made.

Clark contends that this is similar to *Mann*, in that the Trustee knew for a long time of the defective service because Clark's *Answer* notified the trustee of the defective service by the fact that it raised improper service as an affirmative defense. The *Answer* notified the trustee that Clark contended that proper service had not been made on it, but the *Answer* did not notify the trustee of defective service on all the other defendants, including The Shelton Group. Moreover, Clark did not specify why the service was defective in its *Answer*; it only set forth improper service as an affirmative defense. There could be a number of reasons Clark would claim that the service was improper, for example, service was mailed to an incorrect address, service was not mailed to the registered agent, the service was not mailed to the attention of the registered agent, or service was not timely mailed. The trustee could not know for what reason Clark contended that service was improper based on the *Answer* alone, or know that the same defect applied to the trustee's service on The Shelton Group. Therefore, the trustee

did not have notice of the defective service prior to Clark's opposition to default judgment.

The trustee did wait a significant amount of time after notice of the defect was given by Clark's opposition to the trustee's request for default before filing the *Line Request*. The trustee did not allege any outside forces preventing the trustee from requesting the reissuance of a summons upon the filing of Clark's opposition to the request for entry of default, or after the court issued the order denying an entry of default. However, unlike *Mann*, where the plaintiffs did nothing for five months, the trustee filed the *Line Request* seven weeks after Clark's opposition to the request for default judgment and only 34 days after the court denied the request for a default judgment. While this delay was unfortunate, it was not prejudicial or evidence of bad faith.

The trustee further contends that there would be no prejudice to The Shelton Group because The Shelton Group does not care about the proceedings against it. The record shows that The Shelton Group made an appearance in the related adversary proceeding *Loudoun Commercial Title, L.L.C.*, but shortly after doing so, The Shelton Group's attorney withdrew as counsel in June 2017, and The Shelton Group did not participate any further in that proceeding. This does not mean, however, that it has waived proper service to all further actions initiated against

13

it.

The record does support, however, that the trustee acted in good faith.  The trustee could reasonably believe that The Shelton Group did not intend to take any action to protect its interests throughout the bankruptcy case, as evidenced by its inactivity in Adversary Proceeding No. 17-10044.  Under the circumstances, the trustee could reasonably believe that The Shelton Group did not intend to take any action to defend its interests, and could reasonably believe that it would not respond to the trustee's summons and complaint.

The trustee also contends that The Shelton Group had actual notice of the suit against it.  The record shows that the summons was served on one of the listed addresses of The Shelton Group's registered agent, Chris Shelton.  The trustee has presented no evidence, however, to prove that the address was an actual address for Chris Shelton, or that he actually got direct notice that this adversary proceeding was initiated against The Shelton Group.  However, the docket reveals that when a copy of this adversary proceeding complaint was filed in the main case, Case No. 15-00623, at Dkt. No. 169, that copy was transmitted electronically to "Justin Philip Fasano on behalf of Respondent Christopher Shelton jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com."  It may be inferred that Chris Shelton would have been told about the filing.  Nevertheless, I

do not need to find that The Shelton Group had actual notice of the filing because, regardless, it will not be substantially prejudicial to The Shelton Group to allow it to be properly served and to join the case now, if it so chooses.

On the other hand, a dismissal in this case would not put the plaintiff "in the same position as if the action had never been filed." *Mann*, 681 F.3d at 376 (internal quotes deleted). The statute of limitations has run, and a dismissal means that the trustee would be forever barred from bringing an avoidance action against The Shelton Group. This would prejudice the bankruptcy estate and the debtor's creditors by reducing the amount of the estate that the trustee would be able to recover, resulting in reducing the amount that could be paid on creditors' claims. Unlike *Mann*, where the plaintiffs could not specify which claims were time-barred, the trustee can show all his avoidance claims are time-barred as the statute of limitations has run. The harm to the estate is far greater should the court deny the *Line Request* than the harm to The Shelton Group should the court permit service of the summons and complaint be made anew.

For all these reasons, I find that there was excusable neglect, and there are equitable grounds to reissue the summons.

V

For the afore stated reasons, it is

15

ORDERED that *Clark Construction Group, LLC's Opposition to Trustee's Line Requesting Reissuance of Summons Against The Shelton Group, LLC a/k/a Shelton Group LLC* (Dkt. No. 40) is OVERRULED.  It is further

ORDERED that the trustee's *Line Requesting Reissuance of Summons Against The Shelton Group, LLC a/k/a Shelton Group LLC* ("*Line Request*") (Dkt. No. 39) is GRANTED, and the clerk shall reissue a summons.  It is further

ORDERED that service on The Shelton Group shall be made no later than 17 days after the entry of this order.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.