The document below is hereby signed.

Signed: August 20, 2018



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SHELTON FEDERAL GROUP, LLC, | ) | Case No. 15-00623 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |
| MARC E. ALBERT, CHAPTER 7 | ) | |
| TRUSTEE FOR THE ESTATE OF | ) | |
| SHELTON FEDERAL GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. |
| | ) | 17-10026 |
| v. | ) | |
| | ) | **Not for Publication in** |
| CLARK CONSTRUCTION GROUP, *et al.*, | ) | **West's Bankruptcy Reporter** |
| | ) | |
| Defendants. | ) | |

MEMORANDUM DECISION AND ORDER RE
<u>CLARK CONSTRUCTION GROUP'S MOTION TO QUASH</u>

The defendant, Clark Construction Group ("Clark"), has filed a motion (Dkt. No. 33) to partially quash a subpoena issued by the trustee to the University of Maryland ("University") and to issue a protective order on Clark's commercial/proprietary information. For the following reasons, I will deny the motion to quash. I have already issued an agreed protective order.

I

This adversary proceeding is the bankruptcy trustee's action to avoid several prepetition and postpetition transfers of funds made in a construction project on the University of Maryland's Bioengineering Building, located on the University's College Park campus ("Project"). The debtor was engaged in construction work prior to its filing its bankruptcy case. It entered into a subcontract with Clark to do work on the University's Bioengineering Building with the status of a Minority Business Enterprise.

The trustee contends in the *Complaint* that the debtor contracted to provide the work, materials, and equipment it would use on the Project for a sum of $1,005,000. The trustee alleges that the debtor assigned all its benefits under the contract to a defendant, The Shelton Group, LLC, sometime during the preference period prior to filing the underlying bankruptcy case. The trustee also alleges that the defendants participated in several transfers directly to The Shelton Group, and to the debtor's sub-subcontractors during the preference period and postpetition without the trustee's knowledge or authorization.

The trustee issued a subpoena to the University on December 15, 2017, seeking documents and things relating to, among other things, the University's Minority Business Program requirements and Clark's compliance with those requirements on the Project,

and payment information on the work performed on the Project.

Clark filed a motion to quash the subpoena on January 11, 2018, arguing that several of the subpoena's requests were irrelevant and overly broad. Clark also contended that the subpoena sought commercial/proprietary information that if disseminated would put Clark at a competitive disadvantage. Clark seeks a motion to partially quash the trustee's subpoena. Clark also requested that the court issue a protective order that would protect Clark's commercial/proprietary information. The trustee filed his opposition on January 25, 2018, contending that Clark did not have standing to challenge the subpoena, and disputing Clark's contentions that the subpoena was irrelevant and overly broad. The trustee also informed the court that he was willing to agree to a protective order.

The University has not challenged the subpoena. The trustee represents to the court that the University is prepared to produce the documents in response to the trustee's subpoena.

II

The trustee challenges Clark's standing to bring a motion to quash a subpoena that is issued to a third party. "A party generally has no standing to seek to quash a subpoena issued to a non-party person or entity." *Simu v. Carvalho (In re Carvalho)*, No. 16-10001, 2016 WL 5173212, at 1 (Bankr. D.D.C. Sep. 20, 2016). A party must "claim some personal right or privilege in

the information sought by the subpoena" in order to challenge a subpoena issued to a non-party. *Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221, at 1 (D. Md. Feb. 23, 2010).  If the party does not show a personal right or privilege, the party lacks standing, and the motion must be denied without reaching the merits.  *Id.*

Most of the documents the subpoena requests are the University's business documents, to which Clark would generally not have a personal right or a privilege.  *See United States v. Miller*, 425 U.S. 435, 442–43 (1976).  However, Clark claims a personal right by asserting that the documents contain commercial/proprietary information.  Therefore, Clark does have standing to challenge the subpoena.

III

Clark challenges the subpoena as seeking documents that are not relevant, overly broad, and containing commercial/proprietary information.  I will address each of these challenges in turn.

A.   Relevancy

Subpoenas are governed by Fed. R. Civ. P. 45, made applicable to bankruptcy under Fed. R. Bankr. P. 9016.  Rule 45 does not include relevance as a condition for quashing a subpoena, but "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34." *Transcor, Inc. v. Furney Charters*, 212 F.R.D. 588, 591 (D. Kan.

2003). The theory is that if a discovery request is irrelevant, then the request is an undue burden, and the subpoena must be quashed under Rule 45(d)(3)(A). *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) ("Rule 45(d)(3)(A) requires a district court to 'quash or modify a subpoena that . . . subjects a person to undue burden.' If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue: why require a party to produce information the requesting party has no right to obtain?"). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This rule "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

      1.   Relevance of subpoena requests 1 through 3.

Clark contends that subpoena requests 1 through 3 are irrelevant because they require production of documents and information on the University's Minority Business Enterprise Program ("Minority Business Program"), which is not mentioned in the *Complaint* at all, and Clark's compliance with the University's Minority Business Program. It is true that the trustee does not reference the Minority Business Program in the

5

*Complaint*, but discovery is not limited to issues only raised in the pleadings. *Oppenheimer Fund, Inc.*, 437 U.S. at 351. Information regarding issues and claims not referenced in the complaint, may yet be relevant to the case.

The debtor participated in the Project as a Minority Business Enterprise. The subpoena requests documents and information regarding the Minority Business Program on the Project the debtor was working on. The Minority Business Program may have requirements and limitations of assignment of rights, payments, and responsibilities. This may go to the issue as to whether an assignment of the rights under the subcontract the debtor entered into with Clark could be assigned to the Shelton Group. The Minority Business Program may have limitations and requirements for payment of minority businesses working on the Project, that may be relevant to the trustee's claims or the defendants' defenses. Therefore, the documents and information being sought by the trustee on the Minority Business Program bear on, or could reasonably "lead to other matter that could bear on, any issue that is or may be in the case" under the *Oppenheimer Fund, Inc.* test of relevance. Therefore, I do not find that requests 1 through 3 are an undue burden for irrelevance.

    2.    Relevance of subpoena requests 6 and 7.

Subpoena requests 6 and 7 sought:

**Subpoena Request No. 6:** All certified payment applications, invoices, affidavits, certifications or

>    bills submitted by Clark to you pertaining or related to the Project, including:
>
>    a.   Itemization of the amounts requested and relation to the various elements of Debtor's work or in connection with the Debtor's Subcontract scope of work as covered by each payment requested; and
>
>    b.   Listing of the amount included for work performed by Debtor or in connection with the Debtor's Subcontract scope or work.
>
>    **Subpoena Request No. 7:** All documents reflecting payments made by you to Clark pursuant to the Prime Contract.

Clark contends that subpoena requests 6 and 7 are irrelevant in so far as they request Project payments unrelated to the debtor and the debtor's work. However, the trustee's complaint makes the contention that payments that were supposed to be made to the debtor were not made to the debtor. It would stand to reason, therefore, that the trustee would need to seek information on payments that were being made on the Project to determine whether amounts paid to Clark included payments for work the debtor performed, and to determine where money that was supposed to be transferred to the debtor was actually going. It may be that work performed by the debtor was incorrectly attributed to another entity, leading the other entity to receive payments the debtor should have received. All of this is relevant to the trustee's avoidance and turnover claims.

These payments relate to the Project the debtor was participating on. Therefore, it is relevant to this case to

determine whether the debtor was receiving the payments it was owed.  This would be a different matter if the trustee were seeking payment information on unrelated projects.  Therefore, the documents and information could be related to or lead to information that reasonably relates to the trustee's claims or the defenses of any party.  Therefore, subpoena requests 6 and 7 are relevant.

    B.    Breadth

Similar to relevancy, a challenge that the subpoena is overly broad is not a reason for quashing a subpoena under Rule 45, but is nonetheless a reason to quash a subpoena as beyond the scope of allowable discovery under Rule 26.  *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240-241 (E.D. Va. 2012).

        1.    Breadth as to subpoena requests 1 through 3.

Clark contends that subpoena requests 1 through 3 are overly broad because the complaint does not mention the Minority Business Program.  However, as noted above, an issue does not need to be in the complaint to be relevant and discoverable.  If a document bears on or could lead to discovery of information bearing on an issue in the case, and is thus relevant and discoverable, then the request for information on that issue would not be overly broad.  The requests require production of documents on the Minority Business Program as it relates to this

project that the debtor participated in.  All such documents are necessary to understand the debtor's participation in the program and any effects the program may have had on debtor's compensation in the Project.  These requests are not overly broad.

        2.   Breadth as to subpoena requests 6 and 7.

Clark further contends that subpoena requests 6 and 7 are overly broad because they seek the payment information to entities unrelated to the debtor and for work not performed by the debtor.  Again, the trustee's contention is that payments that were supposed to be made to the debtor were being made to other entities.  The trustee contends that the debtor was under contract to receive $1,005,000 for its work, but did not receive any payments.  It is not an overly broad request to seek information to see where the payments under the Project went to determine where the money the debtor was supposed to receive actually went.

Moreover, the trustee is seeking the invoices and payments as they relate to this particular project.  The matter would be different if the trustee were seeking payment information on unrelated projects.  I do not find these requests to be overly broad.

        C.   Commercial/Proprietary Information

Clark seeks to quash the subpoena because the documents and things it seeks contain commercial/proprietary information.  The

9

Court may quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." Rule 45(d)(3)(B)(i). Quashing a subpoena is an extraordinary relief, and "[a] court should be loath to quash a subpoena if other protection of less absolute character is possible." *U.S. Dep't of the Treasury v. Pension Benefit Guaranty Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014).

Courts are granted discretion whether to grant a motion to quash a subpoena to protect trade secrets. This implies that there are times when trade secrets should be allowed to be disclosed. Moreover, because the general rule is to allow broad discovery, this discretion also implies that courts should consider alternative possibilities of protecting trade secrets that also provides the seeking party its discovery. Some other methods courts and parties could use are to allow redacting documents with trade secrets, or to allow parties to create a privilege log with trade secrets, as this court has done in the underlying bankruptcy case on a motion to quash a subpoena issued to the Smithsonian. *In re Shelton Federal Group, LLC*, Case No. 15-00623, at 9-10 (Bankr. D.C. July 26, 2017) (*Memorandum Decision and Order re Motion to Quash Subpoena*)(Dkt. No. 148)). Another option is to allow the trustee's counsel to review the documents, but not provide the trustee copies. The parties agreed to a proposed protective order, and the court has entered

that order.  Clark has not shown why quashing the subpoena is necessary over the less drastic measure of a protective order. The court will deny the motion to quash, but enter the agreed protective order.

IV

For the aforesaid reasons, it is

ORDERED that the defendant Clark Construction Group's request (part of Dkt. No. 33) to partially quash is DENIED.  It is further

ORDERED that Clark Construction Group's request (also part of Dkt. No. 33) for a protective order has been GRANTED via the consent protective order previously entered.

[Signed and dated above.]

Copies to: Recipients of e-notification of filings.